UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────────

GAIL A. VILLANI,

                              Plaintiff,

            -vs-                                    04-CV-00654JTC

NATIONAL MARINE CORP. and
FOUNTAIN POWERBOATS, INC.,

                              Defendants.

─────────────────────────────────────────

        In this removal action, plaintiff Gail A. Villani seeks money damages as a result of

alleged fraudulent misrepresentations made in connection with the purchase of a boat

manufactured by defendant Fountain Powerboats, Inc.[1]   Plaintiff has moved for partial

summary judgment as to liability, and Fountain Powerboats has cross-moved for summary

judgment pursuant to Fed. R. Civ. P. 56.  For the reasons that follow, both motions are

denied.


                              **BACKGROUND**

        Fountain Powerboats, founded in 1979 by Reginald Fountain, is a designer and

builder of high performance powerboats with a manufacturing facility in Washington, North

────────────────────

        [1]Plaintiff also named National Marine Corp., the Ohio-based dealer who sold her the boat, as a
defendant in this action.  As set forth in the affidavit of Teresa Brophy Bair, Esq. (Item 12), National Marine
retained the law firm of Harris Beach PLLC as local counsel, and Harris Beach filed an answer and cross-
claim on National Marine's behalf (Item 5).  Shortly after filing the answer, Harris Beach found out that
National Marine was in receivership as the result of a $5 million judgment entered against it in Turnbull
County, Ohio, Court of Common Pleas, and Harris Beach moved to withdraw as National Marine's
counsel.  On January 13, 2006, this court granted the motion, and directed National Marine to file a notice
of appearance of new counsel within thirty days (see Item 23).  No notice of appearance has ever been
filed, and all attempts to communicate with National Marine or its representatives have failed.

Carolina.  In May 2003, after plaintiff's husband Kurt Villani Sr., and her son Kurt Jr., visited National Marine's facility in Ohio, plaintiff purchased a custom-built Fountain 47-foot Lightning power boat with two staggered Sterling racing engines (the "47' Lightning") from National Marine for $525,650.00.

The Purchase Agreement, dated May 10, 2003, described the boat as a Year 2003 model, serial number FGQ47800C203 (Item 44, Ex. 2).  However, the Hull Identification Number ("HIN") permanently stamped into the hull of the boat is FGQ47800C202,[2] and the original boat papers–including the Manufacturer's Statement of Origin of a Boat or Motor ("MSO") and Builder's Certification and First Transfer of Title ("Builder's Certification"), which document the March 15, 2002 transfer of title from Fountain Powerboats to National Marine–identify the model year or year of construction as 2002, and the serial number/HIN as FGQ47800C202 (see Item 33, Exs. 5, 6).

---

[2]Federal regulations governing United States Coast Guard oversight of navigation and navigable waters require boat manufacturers and importers to identify each boat with a Hull Identification Number, containing the following twelve identifying characters:

(a) The first three characters must be a manufacturer identification code assigned under § 181.31(a) or the importer designation assigned under § 181.31(b).

(b) Characters four through eight must be a serial number assigned by the manufacturer in letters of the English alphabet, or Arabic numerals, or both, except the letters I, O, and Q.

(c) Characters nine and ten must indicate the month and year of certification when a date of certification is required.  In all other cases characters nine and ten must indicate the date of manufacture.  The date indicated can be no earlier than the date construction or assembly began and no later than the date the boat leaves the place of manufacture or assembly or is imported into the United States for the purposes of sale. Character nine must be indicated using letters of the English alphabet.  The first month of the year, January, must be designated by the letter "A", the second month, February, by the letter "B", and so on until the last month of the year, December.  Character ten must be the last digit of the year of manufacture or certification and must be an Arabic numeral.

(d) Characters eleven and twelve must indicate the model year using Arabic numerals for the last two numbers of the model year such as "82" for 1982 and "83" for 1983.

33 C.F.R. § 181.25; see also 33 C.F.R. § 181.23.

According to the affidavit of Reginald Fountain, the 47' Lightning purchased by plaintiff was built in 2002, but was designated by Fountain Powerboats as a 2003 model because it was one of a kind (since all other 47' Lightnings are equipped with twin, or triple, Mercury engines), and was completed after the 2002 boat show season had begun (Item 37, ¶¶ 7-8).   Mr. Fountain attests that the HIN stamped into the hull of the Villanis' 47' Lightning was a "typographical error" (*id.* at ¶ 10).   He further attests that, following an industry performance trial in October 2002, the HIN on the MSO and Builder's Certification were "corrected" from FGQ47800C202 to FGQ47800C203, identifying the 47' Lightning as a 2003 model built in March 2002 (*see id.* at ¶¶ 10-12, 19-22).

In a letter dated January 28, 2004, addressed to both National Marine and Fountain Powerboats, plaintiff's attorney, Anthony D. Parone, outlined these serial number/HIN discrepancies, and advised that soon after the Villanis took delivery of the 47' Lightning in May 2003, "the lifters collapsed and the transmission blew and had to be replaced," resulting in "more than $10,000.00 in repairs" (Item 37, Ex. C).   According to Mr. Parone's letter, "[t]he sale of this boat as a new 2003 boat when in fact it had been built in 2002 and had been used a number of hours, is a fraudulent sale" (*id.*).

This action was commenced in June 2004 by the filing of a summons and complaint in New York State Supreme Court, Niagara County.   The case was removed to this court on the basis of diversity jurisdiction, and plaintiff subsequently retained new counsel and filed an amended complaint.   She alleges that, by changing the title of the 47' Lightning to indicate that it was a 2003 model when in fact the boat was built and used in the year 2002, Fountain Powerboats knowingly and fraudulently misrepresented material facts which plaintiff relied upon to her detriment (*see* Item 15, ¶¶ 18-22).   As damages, plaintiff

seeks the entire purchase price of $525,650.00 plus "other consequential damages" as well as punitive damages (*id.* at ¶ 23).

Plaintiff now moves for partial summary judgment in her favor on the ground that there are no genuine issues of fact for trial as to Fountain Powerboats' liability for fraudulent misrepresentation. Fountain Powerboats responds that the amended complaint does not plead fraud with the particularity required under Fed. R. Civ. P. 9(b), and that even if it does, summary judgment should be granted in favor of Fountain Powerboats because plaintiff's evidence is insufficient as a matter of law to meet the "clear and convincing" standard of proof applicable to a fraud claim.

## DISCUSSION

### I.    Summary Judgment

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The rule also provides that "[a]n interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages." Fed. R. Civ. P. 56(d)(2). In ruling on a motion for summary judgment, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citing *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 255 (1986)).

It is the moving party's burden to show that no genuine issue of fact exists. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes*

*v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).  An issue of fact is considered to be "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, *quoted in Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999)).  A fact is considered to be "material" when it "might affect the outcome of the suit under the governing law . . . ."  *Id.*, *quoted in McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007).

To defeat a properly framed motion for summary judgment, the non-moving party "must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  While the response "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), the party is not required to show that the issue can only be resolved in its favor.  "[R]ather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968), *quoted in McClellan*, 439 F.3d at 144.  Summary judgment is therefore inappropriate "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

## II.     Plaintiff's Motion:  Liability for Fraudulent Misrepresentation

Plaintiff seeks partial summary judgment under Rule 56(d)(2) on the ground that there are no genuine issues of fact for trial with respect to her claim of fraudulent

misrepresentation against Fountain Powerboats.   In response to plaintiff's motion, defendant primarily contends that plaintiff's fraudulent misrepresentation claim fails to meet the pleading requirements of Rule 9(b), which provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

To satisfy the "particularity" requirement, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *see also Brownstone Inv. Group, LLC. v. Levey*, 468 F. Supp. 2d 654, 659 (S.D.N.Y. 2007).  This court's review of the amended complaint reveals that plaintiff has satisfied these pleading requirements.  Plaintiff has identified the title document issued by defendant at the time of purchase as the instrument containing the statement that the boat was a 2003 model, and has provided the explanation that the statement was false because defendant knew the boat was actually a 2002 model when it issued the title (*see* Item 15, ¶¶ 18-20).  As such, plaintiff has sufficiently provided "fair notice of [her] claim, to enable preparation of [a] defense . . . ."  *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007) (citing  *DiVittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

Defendant also argues that even if the court should allow the complaint to go forward, plaintiff has failed to produce sufficient proof to satisfy the elements of her fraudulent misrepresentation claim despite ample opportunity to do so during discovery. To succeed on her claim for fraudulent misrepresentation, plaintiff must ultimately show

that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995), *quoted in Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 19 (2d Cir. 1996). Under New York law, each element of a fraudulent misrepresentation claim must be proven by clear and convincing evidence. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 784-85 (2d Cir. 2003) (citing *Hutt v. Lumberman's Mut. Cas. Co.*, 95 A.D.2d 255, 256-57 (2d Dep't 1983)).

As to the first element, plaintiff refers to the United States Coast Guard Regulations, which define a boat's "model year" as "the period beginning August 1 of any year and ending on July 31 of the following year. Each model year is designated by the year in which it ends." 33 C.F.R. § 181.3. According to plaintiff, because it is undisputed that the Villanis' boat was built in March 2002, it must be considered a 2002 model as a matter of federal law; and therefore, defendant's issuance of title documents identifying the 47' Lightning as a 2003 model constitutes clear and convincing evidence of a materially false representation.

Defendant concedes, as it must, that the 47' Lightning was built in 2002, and that the HIN permanently stamped on the inside of boat's hull is FGQ47800C202, indicating that the boat was manufactured in March 2002 and its model year is 2002. *See* 33 C.F.R. § 181.25(c), (d) (note 2, *infra*). Defendant further concedes that it changed the HIN on the MSO and Builder's Certification from FGQ47800C202 to FGQ47800C203 at some point

-7-

after the industry performance trial in October 2002, but prior to the sale of the boat to plaintiff in May 2003.

However, defendant contends that this practice was in conformance with the standards of both the U.S. Coast Guard and the boat manufacturing industry, which allow the manufacturer to designate a boat's model year at its own discretion.  In support of this contention, defendant has submitted the affidavit of Martin Sanborn, Fountain Powerboats' Vice President for Customer Service, in which he outlines his efforts confirming the Coast Guard's policy interpretation of the HIN regulations, as explained in a document entitled "Boating Safety Circular 70," that "[s]election of the model year of a boat is left to the boat manufacturer."  (Item 38, Ex. E, p. 3).  Additional documentation attached to Mr. Sanborn's affidavit shows that in August 2006, he secured formal authorization from the Coast Guard to change the HIN stamped into the hull of plaintiff's 47' Lightning to indicate that it was a 2003 model, thereby "correct[ing] an error by the boat manufacturer and ensur[ing] that the HIN on the boat agrees with the vessel paperwork."  (*Id.*, Ex. I).

This showing by defendant is sufficient to raise genuine issues of fact not only with respect to the first element of plaintiff's claim–*i.e.*, whether the vessel documentation delivered to the Villanis upon purchase contained material false representations about the boat's model year, but also with respect to the second element–*i.e.*, whether those statements were intended to defraud the Villanis or any other purchaser.  Based on this showing, the court has little trouble concluding that defendant has met its burden as non-movant to come forward with proof that could reasonably support a jury's finding that plaintiff has failed to establish each element of her fraudulent misrepresentation claim by clear and convincing evidence.

Accordingly, plaintiff's motion for partial summary judgment must be denied.

III.    **Defendant's Motion: Failure to Establish Fraud by Clear and Convincing Evidence**

This leaves the question raised by defendant's cross-motion: whether plaintiff's failure to establish each element of her fraud claim entitles Fountain Powerboats to summary judgment dismissing the complaint.   According to defendant, because the evidence produced during discovery is insufficient as a matter of law to meet the "clear and convincing" standard applicable to plaintiff's fraud claim, no reasonable jury could return a verdict for plaintiff, and that the jury would instead be compelled to return a verdict in favor of Fountain Powerboats.

As the discussion above suggests, the court has concluded that the evidence produced during discovery is sufficient to raise genuine issues of material fact "to require a jury . . . to resolve the parties' differing versions of the truth at trial."  *McClellan*, 439 F.3d at 144.  To take the next step urged by defendant and find that this evidence is insufficient for plaintiff to meet her burden of proof as a matter of law would require the court to usurp the jury function of assessing the weight of the evidence, which it cannot do.  Rather, the cases make it clear that in deciding a summary judgment motion:

> The court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried. Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.

*Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir.1997) (citations omitted).

Accordingly, the court concludes that defendant has not met its burden as movant to demonstrate that no genuine issues exist for trial and that it is entitled to summary judgment dismissing the fraudulent misrepresentation claim against it as a matter of law.

## **CONCLUSION**

Based on the foregoing, plaintiff's motion for partial summary judgment (Item 30)

is denied, and defendant's cross-motion for summary judgment (Item 35) is also denied.

A telephone status conference shall be held on May 28, 2008, at 10:30 a.m.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   May 2       , 2008
p:\opinions\04-654.april2308